Case 23-1095. Each side has 15 minutes and both of the parties appear to be appearing remotely. Alright, can you hear us okay? Yes, Your Honor. And can you see each other alright? Yes. Alright, then we're ready to begin. May it please the Court, my name is Caroline Medeiros and I'm representing the petitioner in this case, Christian Ruiz. I'd like to reserve three minutes for rebuttal. Mr. Ruiz is seeking review of the Board of Immigration Appeals denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. There are four main issues I'd like to address today. One is this Court's jurisdiction to review the agency's determination on asylum timeliness. Two, the BIA's denial of Mr. Ruiz's motion for administrative closure. Three, the agency's finding that Mr. Ruiz is not eligible for asylum and withholding of removal. And four, the agency's denial of CAP protection. First, this Court does have jurisdiction to review the agency's determination on the timeliness of Mr. Ruiz's asylum application. The government's reliance on Wilkinson v. Garland is misplaced. Wilkinson actually reaffirms that Courts of Appeal do have jurisdiction to review mixed questions of law and fact, even where provisions like 8 U.S.C. 1158A3 may limit judicial review. Let me ask you this. Does Mr. Ruiz assert that he presented facts and evidence concerning the delay in his application for asylum that the agency failed to consider? Or were his facts and evidence on this issue accepted as uncontested? He presented facts. I mean, he did the best, honestly, he did the best that he could at the time. He was detained in Tacoma, Washington, and through his testimony, he talked about his trauma as a child in Nicaragua, and that leading to, that excusing his late filing of his asylum application. So the facts are not uncontested then? I believe they're not uncontested. Sorry, they are uncontested. Well, okay, I'm confused. Okay, you're saying that he presented some, so what are the uncontested facts here? He was, growing up in Nicaragua, he suffered cumulative harms. His father, at five years old, was murdered. His mother was pursued by the Sandinistas for trying to investigate his father's murder. As a child, he was forced to join the Sandinista youth group and dig trenches. He witnessed dead bodies in the street, and he talked about how these childhood traumas have been resurfacing lately, and that was the reason that he, you know, the reason that, for his delay in the filing of asylum. I believe the court's precedents in Ramadan v. Gonzalez and Jusia v. Mukasey established that the changed or extraordinary circumstances question under 8 U.S.C. 1158 A2D is a reviewable mixed question of law and fact. Wilkinson is consistent with this precedent, and the question of whether Mr. Ruiz has demonstrated extraordinary circumstances to overcome the one-year bar is a mixed question that this court has jurisdiction to review under 8 U.S.C. 1252 A2D. I mean, the question really, the holding of Wilkinson really doesn't affect Ramadan. The question really is, is the court's response to the government's textual argument in that case, where the court lists a bunch of statutes that it contains the phrase that was taken out of the statute at issue in Wilkinson, right, and describes them as giving the AG discretion. So that's really what it comes down to, right, is that whether that comment alone, under our standard in Miller v. GAMI, is enough to clearly abrogate the reasoning or the holding of Ramadan, right, which is the underpinning of Jusia. So there's, I think there's, I mean, that's the government's whole argument is based on essentially that one paragraph in Wilkinson. So, you know, as a three-judge panel, normally the rule is we're bound by our court's precedent unless the Miller v. GAMI standard applies. So I think we need to focus our argument on that. Are there any cases applying Miller v. GAMI that you say weigh in favor of your position, which is that there was not sufficient abrogation? I'd have to research the issue further. Well, it's kind of important, and I'm going to mention a couple of cases that I've been on since, and maybe the government, since the government's making the argument of no jurisdiction. I was on a case called Zia, 112, Fed Fourth, 1194, and we found jurisdiction there. Now, it wasn't the exact same, it was a discretionary call, but it wasn't the exact same thing as the asylum statute of limitations. I've been on another case since, which are all ahead of this case, Lopez v. Garland, and that's at 116, Fed Fourth, 1032, and it cites Ramadan as still being good law. So I guess those are the type of things I would have maybe expected you to pull up, because it maybe supports your position, but I'm going to ask the government to respond to. Okay. I just want to maybe also touch on the administrative closure issue next, that the BIA abused its discretion in denying Mr. Ruiz's motion for administrative closure. Mr. Ruiz sought closure to pursue an I-601A unlawful presence waiver based on an approved I-130 filed by his U.S. citizen wife, and the BIA erred in two key ways. I believe it improperly considered DHS's untimely opposition to the motion, and even if DHS's opposition was considered, the BIA has authority to grant administrative closure over DHS's objection under a matter of avetision, and the BIA failed to properly weigh the avetision factors, particularly Mr. Ruiz's likelihood of success on the 601A waiver. Administrative closure would allow Mr. Ruiz to pursue... All right, but what's the standard of review on that? They did consider the light brief, so what's the standard of review? You're saying they erred in considering the light brief, so what's the standard of review? Abuse of discretion. That's kind of an uphill battle, so push the rock uphill and tell me why we should find an abuse of discretion there. I mean, I think that the BIA did not properly weigh the avetision factors. They get the law wrong? I don't think that they accurately applied the facts of his case to avetision. On an abuse of discretion standard, we can't just disagree with their application of the law. We have to find an error of law or a gross abuse, so their gross misapplication of some kind, arbitrary, so just disagreeing with their determination is not quite enough, and were they correct that Ruiz could still seek his waiver even without the administrative closure? Yeah, I do see that there is a way. There is the I-212 waiver that they mentioned, but again, we're here with a final order of removal, and if they'd allowed for administrative closure, you avoid a final order of removal, and ultimately he could reinstate the appeal and terminate the proceedings. Moving on to issues with the agency's asylum and withholding eligibility analysis. Sorry, counsel. Before you move on, I did want to go back a little bit to the government's alternative jurisdictional argument, which was that there are disputed facts regarding the extraordinary circumstances showing, and I understand that your position is that the facts are not disputed. If I understand the government's argument correctly, is that the ultimate fact of whether his past experiences were the cause of his delay is in dispute, but are there other than that ultimate fact, I would say, which is arguably a mixed question of law and fact. Is there any other historic facts that are in dispute? In my opinion, there's no other undisputed facts. In the government, if I understand correctly, the agency's position was just that he did not do enough to substantiate his claim that the delay was caused by his prior trauma, that he didn't connect the dots, essentially. Yes, yes. Just to briefly touch on some of the issues with asylum and withholding, the IJ and BIA failed to properly consider the cumulative effect of the harms, and this, again, is going into the reasons for his delay. Again, his father was murdered by the Sandinistas when he was five years old. He was forced to join a youth group, dig trenches, and witness dead bodies in the street. The agency failed to properly assess these cumulative harms through the lens of a child, as required by this court's precedent in Hernandez-Ortiz v. Gonzalez. Even absent past persecution, Mr. Ruiz established a well-founded fear of persecution. The agency's finding that he does not have a well-founded fear is not supported by the substantial evidence. There's country reports that show that Daniel Ortega, the same person who led the Sandinista revolution in 1979, has returned to power. And this regime has violently and brutally repressed dissent with human rights organizations documenting increased political detentions and extrajudicial killings. He testified credibly that he would speak out against injustice if returned, and the agency failed to consider how the Ortega regime would likely perceive Mr. Ruiz as anti-Sandinista based on his family history and his potential for political activism. I realize my time is now limited, so I will reserve the rest for rebuttal. All right. There don't appear to be additional questions right now, so you can reserve that. Thank you. All right. We'll hear from the government. Good morning. Good morning. Sarah Puglisi for the government. Sarah Puglisi for the government. May it please the court. I would just like to start, Judge Callahan, your question about the cases that you would like me to address. I'm not prepared to address them at this time, but I will file a response in the form of a 28-day or supplemental briefing. No, you don't need to do that because I'm on both the cases, so there's nothing you're going to tell me about it. But the issue is since we're finding jurisdiction in those cases and we're not overruling Ramadan, I guess the question for you would be do we have to – so those are cases that I would be controlled by. Is it necessary to overrule Ramadan, that Wilkinson overrules Ramadan? Is that necessary for us to find in order for your argument of no jurisdiction to succeed? I think it is. And, again, this is something that I completely agree with you that you know better than I do with respect to these cases. I don't know to the extent that those things were specifically argued in those cases and we're fully – Well, there are different areas of discretion that are being exercised. But Ramadan is cited as good law there, and they're post-Wilkinson. So my question is obviously to overrule Ramadan, either Wilkinson has to do it under Miller v. GAMI and all of that, or we're bound by our three-judge panels. So if we feel that we're bound, do you lose here on the no jurisdiction? I think so, yes. It doesn't mean you lose the case. It means that we go to the merits, that we exercise jurisdiction. Yeah, I do think we lose on that specific issue, yes. And I would just like to further explain our argument with respect to what is irreconcilable very specifically. As Judge Sun pointed out, yes, our argument is really based on the paragraph in Wilkinson where the Supreme Court is rejecting the government's textual argument that essentially the lack of language like the language that does exist in the asylum statute to the satisfaction of the Attorney General, that that denotes a discretionary determination. Counsel, on that point, I have – because your briefing just says that the Miller v. GAMI standard has been satisfied, but do you have any cases in which we have found clear abrogation based on that type of brief passing statement? I mean, the court did not engage in the type of statutory textual analysis that the three-judge panel did in Ramadan. So do you have – I mean, I understand your argument that it seems that the court looked at that language and said that's discretionary, but, you know, without discussion or explanation. So to me, the question sitting here is, under the Miller v. GAMI standard, do we normally find clear abrogation based on that type of passing statement? And I couldn't find one where we have. So have you? Not the way you framed the question, but I would respectfully disagree that it's a passing statement in Wilkinson. It's critical to the court's determination that the lack of that language is probative in the statute at hand. So you don't have a case – sorry, I just – I couldn't hear your first part of your answer. So in terms of cases applying Miller v. GAMI, you don't have one that's comparable? Again, the way you framed that question. If it's a statement that doesn't really get to the heart of the analysis that is irreconcilable, no. But I also – the extent to which Miller v. GAMI is a really substantive standard, I'm not sure that that's really well-developed in the cases applying it. But again, because I – as Judge Callahan has already indicated, I haven't fully addressed that standard sufficiently in the brief, but I don't want to speak ahead of myself about it. So the other concern I have is that Ramadan is now 22 years old, and we've been applying it since. And in 2010, in Kukana v. Holder, the Supreme Court did essentially something very similar to what they did in Wilkinson, which is in deciding another issue, they described various provisions as giving the AG discretion, including Section 1182A3D3. And then they say, and that section contains the same, to the satisfaction of language, that's at issue here. So the court in Kukana said that provision is discretionary. Basically, the government could have been making the same argument based on Kukana that it is making based on Wilkinson. And yet we've never treated Kukana as clearly abrogating Ramadan or Husayf. So ultimately, that's where I have some trouble saying, well, now after another 20 years, we're going to say it's abrogated. I understand that concern. I think at bottom is the government is trying to reconcile a lot of recent Supreme Court decisions that seem to say pretty forcefully what the statutory text means and doesn't mean. And we're still, in developing our litigation, trying to synthesize the state. in this, I was disappointed in the sense that, you know, while people think that we look, that we just want to decide more cases, if the Supreme Court had been more clear in Wilkinson rather than setting up this two-step process and just said, hey, it's discretionary, you don't have jurisdiction, then we wouldn't even be talking about this in all of those cases. We would have less cases, you know, because the Supreme Court. But as you know, and we have students here in the courtroom, we can disagree with the Supreme Court all that we want, but we're bound by it. And so even if I wasn't sitting on the case and I would have decided it differently even perhaps, I don't get to do that here. So there's this two, you know, anytime you have a two-pronged step instead of just saying it's a discretionary item, no jurisdiction, that would have been really easy here. The two-step process made it a little tougher. Totally. Yeah, I agree. Do you want to talk about the agency, why the agency did not err in denying Mr. Ruiz's motion to administratively close his case? Yeah, sure, and yeah, I think just move on generally to the other issues considering the time constraints. Yeah, the agency did not abuse its discretion because its determination is fully consistent with the law about whether administrative closure was necessary for the path to status that this applicant was seeking. As the petitioner has conceded, there's no error of law there. And I'd also just very quickly like to note that the applicant also has never articulated, either in briefing to this court or below, that the agency acted arbitrarily in accepting an untimely motion by DHS because of some sort of pattern of accepting DHS's untimely applications versus, or motions, excuse me, versus not accepting respondents' untimely applications. It's just that allegation of arbitrariness has not been supported by specific arguments. And so, again, the applicant hasn't shown that there's an abuse of discretion under that standard here. On your alternative, I'm going to send you back to your alternative jurisdictional argument, which is that his extraordinary circumstances exception claim depends on disputed facts, which we lack jurisdiction to consider. What I have trouble with is distinguishing this case from HUCF itself, where the court said, you know, we have jurisdiction to resolve the extraordinary circumstances question. And, essentially, the agency, it seems to me, from reading HUCF, very similarly said, yes, he claims all these terrible things happened, but he just failed to show how that caused, he just doesn't have enough evidence, or he just failed to show causation, essentially, for the delay. And I understand you to be arguing here that that finding of causation is the disputed question of fact. But in HUCF, we did not treat that as a question of fact, over which we lack jurisdiction. Thank you for that question. I did want to clarify that, based on your questions to the petitioner. There's also being, also in dispute is, essentially, the applicant's state after he entered the United States and before he applied for asylum. Again, just not only the effects of the trauma with respect to how it directly impacted the delay, but just what those effects were. And as I understand your question, I think even still, if you're applying HUCF in a way that that's still reviewable, we also have, maybe, the alternative argument that even if the facts are not in dispute sufficient to review, that substantial evidence supports the agency's decision that there wasn't a connection between that past harm and the delay in its case. That you prevail on the merits, I understand. I just want to make sure I understand your jurisdictional argument, because we do have to find jurisdiction first, affirmatively. And so, I understand you're saying there's uncertainty. I read your brief as saying there's uncertainty about the extent or the impact of these past experiences. on him, essentially, mentally or psychologically. But I guess there's a difference in my mind between uncertainty or lack of evidence versus a genuine dispute of material fact. And is there anything in the record that suggests it's actually factually disputed? There is. The petitioner in his asylum application, there is a block left for an answer to a question asking the applicant to explain if there's been a delay in their asylum application. And the petitioner here stated that the delay was because he didn't understand immigration or asylum law, the immigration system. He did not present any explanation that his experiences and the trauma he experienced were the reason for his delay. The testimony itself that the petitioner references also is contrary to the claim that they're making. The petitioner did not testify. It's inaccurate to reflect the testimony as him saying that his traumas affected the delay in filing. He never said that. He said that the trauma that he experienced was resurfacing, and it explained his alcohol abuse and his multiple DUIs that occurred between the time he entered the United States for the last time and his asylum proceedings. And so those facts really do show that this isn't a historical or accepted fact. And he really didn't make these arguments at the immigration judge level. His counsel even conceded that his application was untimely and did not even present any argument that there was an exception to that filing deadline that should be applied. And in that way, I think this case is more analogous to Gasparian in the sense that that connection is what's being disputed, and I do recognize that that sort of line between whether that's a review of the merits for a question of jurisdiction and whether the facts are disputed, it almost looks like the court was doing a peek into that evidence to find that the historic fact wasn't established. But I do think the same analysis would be appropriate in this case, that those facts aren't supported or are disputed in the record, and therefore there isn't jurisdiction even under HUSIAB. I see that I'm almost out of time, so I would like to address the merits of the withholding and CAT claims very quickly. Substantial evidence also supports the agency's conclusions with respect to the merits of the applicant's withholding and CAT claims. Substantial evidence supports both conclusions with respect to withholding, both the motive requirement and the reasons that DHS rebutted the presumption of future harm. And I think the most probative thing that has recently come up is the fact that the presumption of future persecution is a rebuttable presumption, and the proof of past successful relocation is significant and highly probative evidence that does and often can rebut that presumption, and that is what occurred here. And one last point is just I would like to remind the court of another Supreme Court decision, which is Garland v. Ming Dai, and that credible testimony is not necessarily persuasive testimony or testimony that's sufficient to meet the burden of proof, and that, again, the record supports the agency's conclusions in this case, and under the court's substantial evidence standard of review, the petitioner hasn't pointed to any evidence that compels the contrary conclusion, even if she may have pointed to evidence that supports other conclusions. That's the amount of time. Perfect timing. All right. Thank you. There don't appear to be additional questions, so we'll go back to the appellant. You have a little less than three minutes for any rebuttal. Yeah, I would just say in conclusion I do believe that Ramadan and Husayev continue to be good law in this circuit, even post-Wilkinson, and, you know, this does present a mixed question of law and fact. Maybe it's primarily factual, but it still falls within the statutory definition of a question of law under 1252A2D, and this issue is reviewable by this court. I believe the court can apply the established facts in Mr. Ruiz's case to the statutory and regulatory standard that exists for exceptional circumstances, excusing a late-filed asylum application. Again, the cumulative effects he suffered, he testified to suffering as a child. The cumulative harms that he suffered as a child directly relate to his failure to timely file for asylum. Yes, he entered in 2006 and didn't apply until 2019, but the long-term effects of childhood trauma on mental health should be considered, and I believe that he did testify that his childhood trauma... Weren't they considered, but the question is it didn't resolve favorably for you, so why does this compel a different result? Isn't that the standard you have to show if we get to the issue? Yeah, I mean, and I agree, I think, with my opposing counsel here. He did talk about his childhood traumas in the context of his alcohol abuse. That is true, but the court can make that connection and really understand that childhood traumas, as this court has... I agree the court can make that connection, but are we compelled to make that connection? The IJ didn't find it your way, right? Yes, I believe that you are compelled to make that connection, and there are cases in this circuit, Hernandez v. Ortiz v. Gonzalez, that, you know, looking in the context of past persecution, looking at a child's reaction to injuries for their family from the lens of a child and looking at trauma as something that's long-lasting, that can resurface in later parts of one's life. So I do believe that the court has jurisdiction to review the timeliness of Ms. Ruiz's asylum application. Counsel, the sound was just a little bit fuzzy, and I apologize if I missed your answer on this, but are you agreeing that Mr. Ruiz himself never specifically testified or stated that the reason for his delay was his past trauma or the effects thereof? I don't think he was ever specifically asked that question. And he didn't offer a affirmative answer?  Okay, thank you. All right, your time's up. There don't appear to be additional questions, so this matter will be submitted.
judges: CALLAHAN, NGUYEN, SUNG